OSCAR ERNESTO ROMERO
*Movant for Leave to File as Amicus Curiae, In Propria Persona*
4107 Villa Marena, Col. Puesta del Sol
Playas de Rosarito, B.C. 22710, México
+52 1 646 601 7866 (WhatsApp)
ozromeo338@gmail.com

FILED LODGED RECEIVED MAIL
OCT 05 2026
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, PEOPLE OF THE STATE OF CALIFORNIA, and the other Plaintiff States, | **Case No. 2:26-cv-03097-JHC** |
| Plaintiffs, | **MOTION FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE (LOCAL CIVIL RULE 7(O))** |
| v. | The Honorable John H. Chun |
| AMAZON.COM, INC., | NOTE ON MOTION CALENDAR: October 9, 2026 |
| Defendant. | *Filed by mail, pro se* |

## MOTION FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE UNDER LOCAL CIVIL RULE 7(O)

*[By a non-party, in propria persona. The proposed brief and a proposed order accompany this motion. The proposed order is also sent in Word to chambers.]*

**1. The movant.** Oscar Ernesto Romero is the plaintiff, in propria persona, in *Romero v. Amazon.com, Inc., Twitch Interactive, Inc., et al.*, No. 3:26-cv-02324-JO-JAC (S.D. Cal.), commenced on 13 April 2026 before the Honorable Jinsook Ohta. That action concerns the audience figures published by Amazon.com, Inc.'s subsidiary Twitch Interactive, Inc. He is not a party to this action, and this motion does not ask that he become one. He asks leave to file the brief that accompanies this motion.

**2. The nature of his interest.** He is a viewer and a creator on Twitch and a paying customer of it, and his own sessions are among those counted. This action concerns what advertisers were charged in an auction Amazon.com, Inc. operates. His action concerns what the audience was reported to be: the units against which advertising is sold on the same corporate family's live-video service. The price and the count are two outputs of one set of records, held by one custodian. His interest is that those records survive, and that nothing entered in this action disposes of them, or of the claims of the persons they measure, without the Court knowing that they exist. He and Ms. Lydia Wilson, the creator of the channel measured in the brief, are the individual viewer and the creator: victims, the first-filed action pleads, of an ongoing structural fraud in records held by the same corporate family whose advertising this action concerns. There he sues on his own injury under 18

U.S.C. § 1962(c) and (d), 18 U.S.C. §§ 1589 and 1595, and 42 U.S.C. § 1985(2), and asserts her rights alongside his own (Second Supplemental Pleading, Section IV and correction (t); Fourth Amended Complaint, paragraph 3). He is also the person who reported the conduct: to the Federal Bureau of Investigation, the Securities and Exchange Commission and the Commission itself on 11 March 2026, after which he was suspended, banned, vilified across channels, and met with a procured foreign order as the reason he may not be heard (brief, paragraph 2-A). The count reaches this Court from a victim and a whistleblower.

**3. The parties supported.** The Federal Trade Commission and the Plaintiff States. The movant supports their claims in full and opposes none of them.

**4. Why a brief is desirable.** The Court will set a schedule in this action, and with it the scope of what must be preserved. Amazon.com, Inc.'s subsidiary has already told another federal court, in a paper filed on 15 September 2026, that "Twitch capped channels, eliminated payments, and deployed enhanced viewbot detection" (*Romero*, Docket Entry 132, page 5). Each of those acts leaves a record: a detection output, a cap, a payment eliminated. Those records are sought in the first-filed action. The brief tells the Court where they are sought and what they are, so that two courts do not order the preservation of one dataset on different terms, or one of them unknowingly permit its disposal.

**5. Why no party adequately represents his position.** The Commission and the Plaintiff States sue on the price of an advertising impression. The complaint does not use the words "invalid traffic" or "Twitch."

Amazon.com, Inc.'s interest runs against his. No party here presents the count end of the same records, or the persons the count is made of.

**6. Why the matters are relevant to the disposition of the case.** They bear on four things the Court will decide: the scope of preservation; the coordination of discovery from one custodian across the related proceedings; the pace of this action, against a defense whose record in every forum is time; and the terms of any consent decree, so that no decree releases claims it was not meant to reach. It also tells the Court the plan for those records in the first-filed action: a receiver, with the Commission and the State of California as its custodians (*Romero*, Docket Entries 125 and 128).

**7. Timing.** No motion is pending in this action. The brief is filed before the Court reaches scheduling and preservation, so that it prejudices no party and delays no ruling (Local Civil Rule 7(o)(3)). It asks for no stay and no change to any date.

**8. Candour.** The movant has filed nothing in this action before this motion. On 8 September 2026 he sent counsel for Amazon.com, Inc. copies of papers he had then prepared for this Court and did not file. This motion and the accompanying brief replace them. With this motion he serves on every party the Second Supplemental Pleading delivered for filing in the first-filed action on 28 September 2026, which is his report of the conduct to the enforcement authorities (paragraphs 53 to 56 of that pleading).

**9. The position of each party on the filing of the brief (Local Civil Rule 7(o)(2)).** The movant has not obtained the position of any party before filing. With twenty-three plaintiffs and one defendant, the movant serves every

party by electronic mail with this motion and relies on the opposition period the rule provides: each party may oppose within seven days after service.

**10. Relief.** The movant asks that the Court grant leave and direct the Clerk to file the accompanying brief.

---

Dated: 30.9, 2026.

**OSCAR ERNESTO ROMERO**

Movant, In Propria Persona
4107 Villa Marena, Col. Puesta del Sol, Playas de Rosarito, B.C. 22710, México
ozromeo338@gmail.com · +52 1 646 601 7866

I certify that this motion contains 899 words, in compliance with the Local Civil Rules.

---

**CERTIFICATE OF SERVICE**

I certify that on the date below I caused this motion, the proposed brief and the proposed order to be mailed to the Clerk of the Court for filing. Service on counsel of record is made by electronic mail and is certified in a separate Certificate of Service filed when service is made.

Dated: 30.9, 2026.

__________

**OSCAR ERNESTO ROMERO**

OSCAR ERNESTO ROMERO
*Movant for Leave to File as Amicus Curiae, In Propria Persona*
4107 Villa Marena, Col. Puesta del Sol
Playas de Rosarito, B.C. 22710, México
+52 1 646 601 7866 (WhatsApp)
ozromeo338@gmail.com

FILED LODGED RECEIVED MAIL
OCT 05 2026
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, PEOPLE OF THE STATE OF CALIFORNIA, and the other Plaintiff States, | ) | **Case No. 2:26-cv-03097-JHC** |
| Plaintiffs, | ) | **PROPOSED BRIEF OF OSCAR ERNESTO ROMERO AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS** |
| v. | ) | The Honorable John H. Chun |
| AMAZON.COM, INC., | ) | *Lodged with the motion for leave, pro se* |
| Defendant. | | |

# [PROPOSED] BRIEF OF OSCAR ERNESTO ROMERO AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS THE FEDERAL TRADE COMMISSION AND THE PLAINTIFF STATES

*[Lodged with the motion for leave under Local Civil Rule 7(o). To be filed only if leave is granted.]*

## STATEMENTS REQUIRED BY LOCAL CIVIL RULE 7(o)(4)

**Identity, interest and authority to file (Federal Rule of Appellate Procedure 29(a)(4)(D)).** The amicus curiae is Oscar Ernesto Romero, an individual, the plaintiff in propria persona in *Romero v. Amazon.com, Inc., Twitch Interactive, Inc., et al.*, No. 3:26-cv-02324-JO-JAC (S.D. Cal.). His interest is stated in Part I. He supports the Federal Trade Commission and the Plaintiff States. He files under Local Civil Rule 7(o), on the leave sought by the accompanying motion.

**Disclosure (Rule 29(a)(4)(A)).** The amicus curiae is an individual and not a corporation. No disclosure statement is required.

**Authorship and funding (Rule 29(a)(4)(E)).** No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting it. No person other than the amicus curiae contributed money intended to fund preparing or submitting it.

## I. THE COUNT HAS VALUE, AND IT IS MANIPULATED

**1.** This action concerns the price of an advertising impression in an auction Amazon.com, Inc. operates. Its complaint uses the word "auction" 684

times. It does not use the words "invalid traffic" or "Twitch." The amicus brings the Twitch end of the same records.

**2.** An impression is sold against an audience. On the live-video service of Amazon.com, Inc.'s subsidiary Twitch Interactive, the audience is published as a concurrent-viewer figure. That figure ranks the directory, sets a creator's tier and pay, and is what an advertiser buys against. It has value because it is sold, and it can be manipulated because only the defendant's family of companies computes it. The amicus is at both ends of it: a paying viewer whose sessions are counted and sold, and a creator placed by the ranking the figure drives.

**2-A. The amicus is a victim of the conduct and the person who reported it.** At a public event in July 2023 the creator Ms. Lydia Wilson received him; the defendants in the first-filed action intervened, put him out with a threat of police, and banned the account by which she knew him (Fourth Amended Complaint, paragraph 1). Holders of the moderator authority Twitch confers then reported him to police as a stalker; he was arrested on 2 January 2025 and held one hundred sixty-one days, and a foreign order followed (paragraph 29). After threats against Ms. Wilson in 2026 he found the manipulation of the audience figure, and on 11 March 2026 he reported it to the Federal Bureau of Investigation, the Securities and Exchange Commission, and this Commission (Report No. 199599129) (paragraph 5). Six days later Twitch suspended his account (paragraph 16-A). Since then he has been banned and vilified across channels, removed live from her channel on 13 September 2026, and met in another federal court with that foreign order as the reason he may not be heard (Second Supplemental Pleading, paragraphs A, 7 and 13). The first-filed action pleads all of it as retaliation

against a witness to cover up the fraud in the count, and pleads that the cover-up continues and that he and Ms. Wilson remain its victims. That is why the count reaches this Court from a victim and a whistleblower, and not from the company that holds its records.

**3.** Whether the figure corresponds to human beings is answered from records held by the same corporate family that holds the records this action concerns: the invalid-traffic filtering, the displayed figure, and every adjustment made to it, channel by channel. Together with the live chat that reacts to each broadcast, those records form an ongoing, real-time record of human reaction, labelled genuine or manufactured and quantified: a live data set of the kind on which artificial-intelligence inference is trained and run. The amicus submits that it is among the most valuable assets the defendant's family of companies holds. It is made of its users and its creators. Its value is why its custody matters at both ends of this case.

## II. WHAT DEFENDANT'S SUBSIDIARY HAS SAID ABOUT THE COUNT

**4.** Twitch's Chief Executive stated on his own broadcast: "after the fact where we identify channels that are committing ad fraud, we eliminate any payment to those channels and we do not charge advertisers"; "we will compute what will be a CCV cap for that channel"; and "we will not publicly announce what channels are capped or the level of the cap" (*Romero*, Fourth Amended Complaint, Docket Entry 97, paragraph 18).

**5.** Twitch's Chief Product Officer told the publication Dexerto, in an article dated 28 August 2025: "The technology that we use to detect invalid traffic for ads is separate from what we use to calculate active concurrent viewer

count. Advertisers are not charged for invalid impressions – including viewbots – and creators do not get paid out for these impressions."

**6.** On 15 September 2026 Twitch told the Southern District of California, as its defense, that "Twitch capped channels, eliminated payments, and deployed enhanced viewbot detection" (*Romero*, Docket Entry 132, page 5).

**7.** Read together, those statements describe two numbers computed from the same traffic. One is filtered, and it is the number an advertiser with an auditor is billed on. The other is displayed, capped at a level that is not announced, and it is the number the rest of the market prices against. Each cap, each eliminated payment and each detection output is a record, and those records sit beside the auction records in the same corporate family's systems.

**8.** One channel, one day, measured and preserved by the amicus: on 13 September 2026 the published figure on the channel lydiaviolet moved in four steps between 09:15 and 09:27 Pacific Time, from 2 to 763, 1,957, 2,646 and 3,061, then held between 2,900 and 3,095 until the broadcast ended at 14:14. Over the same broadcast 869 distinct accounts, automated accounts excluded, spoke in the channel's chat.

## III. SIX PROCEEDINGS, THREE LANES, ONE RECORD

**9.** Six proceedings concern the same defendant's records: the first-filed action (*Romero v. Amazon.com, Inc., Twitch Interactive, Inc., et al.*, S.D. Cal. No. 3:26-cv-02324-JO-JAC, filed 13 April 2026), on the count and the conduct against the persons counted; three actions related on 21 September 2026 before Judge Orrick (*Pandiscia*, *Gamlen* and *Gordley*, N.D. Cal. Nos.

3:26-cv-08721-WHO, 3:26-cv-08758-WHO and 3:26-cv-09036-WHO), on the data, including its use for artificial-intelligence training; this action, on the sale; and *Federal Trade Commission v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC, on competition, set for bench trial on 29 March 2027. They divide one record into three lanes: the data, the count, and the sale of the count.

**10.** In *Romero* the records are sought by name: a receiver over "the cap ledger," the "detection-code outputs" and the "enforcement logs" (Docket Entry 54, 9 July 2026); the channel-role grant log and the concurrent-viewer history with every channel-level adjustment or cap (Docket Entry 106); and suspension of every retention schedule touching them (Docket Entry 112). None has been opposed, and none has been decided.

## IV. HOW THE CIVIL AND SOVEREIGN ACTIONS CORRELATE

**11. Two courts will decide this record in open court.** On 14 August 2026 Amazon.com, Inc. adopted an arbitration agreement with a class-action waiver, and gave notice that it "does not apply to litigation pending before August 14, 2026" (Amazon.com, Inc., notice to customers, 14 August 2026; see *Romero*, Docket Entry 91). It does not bind the sovereign plaintiffs, who are not parties to it. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). It does not reach the first-filed action, pending since April. The three private actions, filed after 14 August, may face motions to compel. The count and its sale will therefore be decided in open court in two places: here, and in the first-filed action.

**12. What each brings that the other does not.** This action carries the public's claim to the price, with the remedies Congress gave the Commission

and the States. The first-filed action carries what no sovereign claim reaches: the count as the individual plaintiff measured it, and the conduct of an enterprise that, it pleads, turned on the person who asked about Ms. Wilson, kept up that exclusion after he later found the manipulation of the count, and holds her under the same power (Fourth Amended Complaint, paragraphs 2, 16-A and 47). The sovereign action decides what the market was charged. The civil action decides what the market was sold and what was done to keep it hidden. Neither is complete without the other.

**13. The defense is the same in every forum.** In the first-filed action Amazon.com, Inc. and Twitch Interactive, Inc. appeared one hundred and twelve days after service (*Romero*, Docket Entries 21, 29 and 69 to 74). Their motion to stay every deadline certified that "38 motions are still pending" when seventeen had been withdrawn and six decided (Docket Entry 100). In the Northern District one firm entered twelve appearances across three actions in one day. No defendant has answered in any of the four private actions. This Court found in *Federal Trade Commission v. Amazon.com, Inc.*, No. 2:23-cv-00932-JHC, Docket Entry 404 (10 July 2025), that "it appears that the desire to gain a tactical advantage led to such conduct," and admonished "Amazon and its counsel." The amicus asks no finding about any filing here, which is petitioning. He states the notice: the defendant's counsel here, Davis Wright Tremaine LLP, is its counsel in the first-filed action, and a defendant that coordinates its defense across six proceedings knows what each concerns, including that one is brought by a single self-represented plaintiff at a pace the others do not match. The first-filed action is the furthest advanced on the count: its requests for the measurement records have stood unopposed since 9 July 2026.

## V. WHAT THE AMICUS ASKS THIS COURT TO KEEP IN VIEW

**14. The sovereigns and the receiver.** The records measure residents of every State. In the first-filed action the amicus, as plaintiff, asks, at a minimum, that the Commission and the People of the State of California, the sovereign of that forum and a plaintiff here, be joined as custodians of the receiver over the audience-measurement records, with the United States a party to its equitable terms under 18 U.S.C. § 1964(b), and that every State have notice (*Romero*, Docket Entries 125 and 128; Plaintiff's Second Supplemental Pleading under Rule 15(d), paragraphs 67 and 71). They are welcome in that action should they move. Until then the actions run in parallel, and the claims of the other States are carried here and in their own courts.

**15. One workflow.** The price is tried here. The count is built in the first-filed action. The amicus asks the Court to treat them as the two ends of one record: coordinated preservation, coordinated discovery of the one custodian, and a schedule that does not let time run on the records at either end.

**16. Preservation.** When the Court sets the scope of preservation here, the records described in paragraph 10 are held by the same corporate family as the auction records. No order in this action should permit their disposal, and the Court should know that another court has been asked to preserve them.

**17. The solution, and the terms of any decree.** The amicus supports the Commission and the Plaintiff States, and brings what their complaint does not: a technical solution. The Market Integrity System (MIS) is an open-source method, published by the amicus under the Apache 2.0 licence and

free to the defendant and every other operator (*Romero*, Docket Entry 112), for computing the audience count from the records themselves. It is designed to run on the defendant's own systems; to be verified and certified by the parties as it is built; to hold each user's data anonymised and locked to that user; and to open only by court order and proper authentication. The first-filed action asks that a receiver build and certify it with the enforcement authorities as custodians, and that any resolution there be entered as a consent decree under the court's continuing supervision (Docket Entries 54 and 128; Second Supplemental Pleading, paragraph 71). The amicus asks this Court to keep that solution in view in framing any decree here; that no consent decree or judgment in this action release, or be read to release, the claims of the persons measured by the audience figure or the claims pending in the private actions; and that any proposed resolution touching the audience-measurement records be noticed to the first-filed court before it is entered.

**18. What is not asked.** The amicus asks for no stay, no transfer, no delay and no change to any date in this action or in No. 2:23-cv-01495-JHC. He asks for speed.

---

Dated: 30 9, 2026.

**OSCAR ERNESTO ROMERO**

Amicus Curiae, In Propria Persona

I certify that this brief contains 1,986 words, in compliance with Local Civil Rule 7(o)(4).