THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br>Plaintiffs,<br>v.<br>AMAZON.COM, INC., a corporation,<br>Defendant. | **Case No. 2:26-cv-03097-JHC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SEAL** |

Plaintiffs respectfully request that the Court deny in part Defendant Amazon.com, Inc.'s ("Amazon") motion (Dkt. 91) to permanently seal parts of Plaintiffs' Complaint alleging that since 2019, Amazon secretly overcharged its advertising customers by manipulating the "auctions" it claims to use to set the price of advertisements on its e-commerce platform. Dkt. 1, ¶ 1. Almost all of the information that Amazon seeks to seal relates to how Amazon covertly and steadily inflated prices above actual auction results to avoid detection and conceal the magnitude of the hidden costs it imposed on its advertisers. Amazon's approximately 1.2 million advertising customers have a strong interest in access to this information, which Amazon



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

deliberately concealed from them for years to advance its scheme and which is material to their advertising decisions. This strong interest in disclosure is shared by Amazon's several hundred million shoppers, as well as the general public, especially because the magnitude of Amazon's hidden surcharges reveals how much Amazon illegally added to the costs of selling millions of products to American consumers.

Amazon has failed to establish that disclosure of the redacted information in the Complaint would result in Amazon experiencing harm from any specific competitor using such information about its illegal scheme. To seal the contents of a complaint, a party must articulate compelling reasons supported by specific facts that overcome the strong presumption of public access to the information. Amazon makes no such particularized showing and instead relies on conclusory allegations of theoretical harm that cannot outweigh the public right of access to information central to Plaintiffs' claims.

Accordingly, Plaintiffs request that the Court direct that an unredacted Complaint be filed on the public docket, with the exception of the proposed redactions that Plaintiffs do not oppose, as shown in the version of the Complaint attached as **Exhibit A**.[1]

## BACKGROUND

On August 31, 2026, the Federal Trade Commission ("FTC") and the Attorneys General of twenty-two States (the "Plaintiff States") filed their Complaint against Amazon for violating the FTC Act and the laws of the Plaintiff States. Dkt. 1. The Complaint alleges that Amazon

[1] Plaintiffs do not oppose redactions in: Paragraph 4 (the percentage of Amazon's advertisers that are small businesses); Paragraphs 44 and 101 (the percentage of Amazon's ad business and the revenue amount attributed to each of its Sponsored Ads products); Paragraph 202 (the overcharge and the RoAS reduction amounts for already-identified brands); Paragraph 209 (the "hard reserve" values, which are separate from the hidden deceptive "soft reserve" system at issue); and Paragraphs 253 to 258 (for only the names of advertisers and brands).



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

deceptively inflates the prices that its more than 1.2 million advertising customers pay for advertisements on Amazon's website and app (called "Sponsored Ads"). Since approximately 2012, Amazon has led its advertisers to believe they were competing in a "generalized second price" ("GSP") auction where they would be charged only the minimum amount necessary to defeat the second-place bidder in the auction. In other words, Amazon communicated and advertisers believed that the price for ads was set by competition from other bidders, and advertisers would usually not be charged the amount of their own bid. However, since 2019 Amazon has secretly substituted its own higher price for the prices resulting from its auctions, and in recent years has charged advertisers their own bid amount more than 80% of the time. Internally, Amazon calls this higher price a "soft reserve price," and the extra amount charged to advertisers above the auction price a "surcharge."

The publicly filed complaint includes redactions because it references materials designated confidential when produced by Amazon and third parties ("Producing Parties") in response to Civil Investigative Demands issued by the FTC in its non-public investigation. *See* Dkt. 2 at 1-2. The FTC filed a motion to temporarily seal portions of the Complaint (Dkt. 2) to give Amazon and other Producing Parties an opportunity to argue for permanently sealing the redacted material. On September 28, Amazon filed a Motion to Seal some of the previously redacted information, arguing its proposed redactions cover "information that Amazon's competitors could use to cause Amazon competitive harm." Dkt. 91 ("Amazon Motion") at 2. No other Producing Party has filed a motion to seal information in the Complaint.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

## LEGAL STANDARD

The Ninth Circuit has recognized a "strong presumption in favor of access to court records," incorporated by Local Civil Rule 5(g). *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party filing a motion to seal can only overcome this strong presumption by "articulat[ing] compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotation marks and citations omitted).[2] "Under the compelling reasons standard, 'a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Pond v. Woods*, 2025 WL 3496260, at *1 (W.D. Wash. Dec. 5, 2025) (quoting *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016)) (alteration in original).

If a court determines that a particularized harm will result from public disclosure, the court must then "balance 'the public and private interests'" to decide whether to seal the relevant documents. *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). "Compelling reasons" sufficient to outweigh the public's interest in viewing court records exist when those court records "might have become a vehicle for improper purposes," such as "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

---

[2] As Amazon admits, because the complaint is the pleading on which this action is based, the Court should apply the "compelling reasons" standard. *See M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, 2023 WL 2940031, at *2 (N.D. Cal. Mar. 10, 2023); Amazon Motion at 3-4.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

589, 598 (1978)). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136). "Courts in this Circuit have rejected sealing motions, even when parties have showed compelling reasons, when that information was 'relevant and critical to the [c]ourt's consideration' of the dispositive motions." *WATM LLC v. Payment All. Int'l, Inc.*, 2025 WL 3537585, at *2 (W.D. Wash. Dec. 10, 2025) (Chun, J.) (citing *TML Recovery, LLC v. Cigna Corp.,* 714 F. Supp. 3d 1214 (C.D. Cal. 2024)) (alteration in original).

**ARGUMENT**

The information Amazon seeks to keep sealed largely relates to the magnitude of hidden surcharges Amazon's advertising customers incurred and the mechanisms Amazon used over the years to keep its manipulation of the GSP auction results concealed from the public. The public interest in this information is substantial because it is central to claims brought by federal and state government agencies of widespread deceptive and unfair practices. *See In re Meta Pixel Tax Filing Cases*, 2025 WL 1872974, at *2 (N.D. Cal. May 9, 2025) ("It is hard to imagine a single document that could be more central to the merits of a party's claims than the complaint itself."); *United States v. Contents of Nationwide Life Ins Co. Acct. No. X0961 in name of Warshak*, 2006 WL 971978, at *4 (S.D. Ohio Apr. 12, 2006) ("[A]llegations of widespread consumer fraud underlying this forfeiture action implicate matters of obvious public concern."); *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC,* 2019 WL 5394012, at *2 (M.D. Fla. Sept. 13, 2019) ("[F]ederal litigation concerning time-share contracts is a matter of public concern, especially where there are underlying allegations of consumer fraud.").



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

Amazon fails to provide any compelling reasons supported by specific facts that overcome the strong presumption of public access. Instead, Amazon relies on blanket assertions that this information is "confidential information" or "nonpublic financial data," without identifying any trade secrets or other improper purposes requiring a seal and offers only conclusory allegations that disclosure could put Amazon at a "competitive disadvantage."[3] Dkt. 92 ("Sengupta Declaration") ¶¶ 5-6, 8-9.

## I. AMAZON FAILS TO DEMONSTRATE ANY COMPELLING REASON TO SEAL THE MAGNITUDE OF ITS HIDDEN SURCHARGES

Amazon seeks to seal portions of the Complaint showing the magnitude of the hidden surcharges it imposed on its advertising customers since 2019, including: (a) the gradual increase in surcharge rates — i.e., the percentage increase in the price charged to advertisers above the auction price that was hidden in the cost of Amazon's advertising products (Paragraphs 1, 11, 75, 77, 198, 199, 204, 218, 262); (b) historical snapshots of the surcharge levels on certain product categories and brands (Paragraph 6, 255); and (c) the impact of hidden surcharges on "RoAS" (return on advertising spend), the key metric used by advertisers to measure the performance of their Amazon advertising (Paragraphs 78, 216, and 217).

Amazon argues that this information is "commercially sensitive business information" because it includes "internal performance metrics," which unnamed competitors could use "in their own marketing and sales negotiations with the advertisers that both companies solicit[.]" Sengupta Declaration ¶¶ 4, 8-9. This admission by Amazon that the magnitude of the surcharges

[3] Plaintiffs attach as **Exhibit B** a chart listing each Complaint paragraph that contains redactions along with a reference to Plaintiffs' position with respect to those redactions. Plaintiffs are filing this exhibit under seal since it contains the specific language in the Complaint that is currently redacted to assist the Court's review.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

it imposes on ad prices is a material fact to its customers' advertising decisions illustrates how important it is to *unseal* that information in the Complaint.[4] Amazon's "blanket, conclusory assertions of harm" are insufficient to meet Amazon's burden of demonstrating compelling reasons to keep this central aspect of Plaintiffs' claims sealed. *Bluetooth SIG, Inc. v. FCA US LLC*, 2020 WL 2063561, at *2 (W.D. Wash. Apr. 29, 2020); *see also Lains v. Am. Fam. Mut. Ins. Co*., 2016 WL 5115415, at *1 (W.D. Wash. Mar. 3, 2016) (motion to seal denied because, *inter alia*, the defendant did not "identify the specific potential harm other than its conclusory statement that it would be at a 'competitive disadvantage'"); *Flextronics A.P., LLC v. Ricci*, 838 F. Supp. 3d. 936, 958 (N.D. Cal. 2026) ("[T]he mere invocation of vague concerns about competitive harm are insufficient to carry a movant's burden of overcoming the strong presumption of public access with a specific factual showing of the harm that disclosure will reap.").

In addition, while disclosing Amazon's surcharge rates from 2019 to 2024 certainly would show the public (and its customers) the magnitude and impact of Amazon's inflated prices, Amazon fails to explain how this two-to-six year old historical information would put Amazon at a "competitive disadvantage" now. *See, e.g., Sumotext Corp. v. Zoove, Inc.*, 2020 WL 836737, at *2 (N.D. Cal. Feb. 20, 2020) (denying motion to seal where "prices are historical and not current; hence, the potential for future harm is not obvious."); *FTC v. DIRECTV, Inc.*, 2017 WL 840379, at *2 (N.D. Cal. Mar. 3, 2017) (denying motion to seal trial exhibits that

---

[4] *See FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) ("A misleading impression created by a solicitation is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" (quoting *Cliffdale Assoc., Inc.*, 103 F.T.C. 110, 165 (1984))); *FTC v. Doxo, Inc.*, 2026 WL 1429295, at *7 (W.D. Wash. May 21, 2026) ("Generally speaking, information is material where it 'concerns the purpose, safety, efficacy, or *cost*, of the product or service.'" (quoting *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1121 (D. Nev. 2015)) (emphasis added)).



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

contained "historical pricing information that would not appear to cause significant competitive harm"); *White v. Symetra Assigned Benefits Serv. Co.*, 2022 WL 1136804, at *5 (W.D. Wash. Apr. 18, 2022) (denying motion to seal documents that provided only "historical insight into Defendants' business operations"); *see also Eli Lilly & Co. v. Alderwood Surgical Ctrs. LLC,* 2026 WL 1584704, at *4 (W.D. Wash. June 3, 2026) (denying joint motion to seal when "parties fail to detail what, if anything, 'their competitors' could do with non-public information," which included defendants' upper limit of gross revenue; the upper limit of cost of relevant products; and the profit derived by defendants).

Contrary to Amazon's assertions, there is also little competitive risk to Amazon from a competitor attempting to "reverse-engineer nonpublic revenue information about specific Amazon advertising products," Amazon Motion at 7, from the sealed information in the complaint paragraphs at issue that show the percentage and dollar amount that advertisers were overcharged or the extent to which their RoAS was hindered from 2020 to 2024. Amazon has submitted no evidence showing the need to keep product-level breakdowns confidential, instead merely asserting that "[m]aintaining the confidentiality of this information is of commercial importance to Amazon." Sengupta Declaration ¶ 9. Amazon does not explain why a competitor would want to determine the product-level breakdown of its revenues, or how their doing so would harm Amazon. But even if such calculations did pose a competitive concern to Amazon, at a minimum, the percentage amount of the surcharges should be disclosed as this information alone would be insufficient for any such reverse-engineering attempts. Likewise, information about the impact of Amazon's surcharges on advertisers' RoAS would not allow a competitor to reverse-engineer revenue figures for specific advertising products.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

Amazon's arguments also particularly miss the mark with respect to what it characterizes as "the confidential information of nonparty advertisers" at Complaint paragraphs 253–258. Amazon Motion at 7. Amazon argues that portions of paragraph 255 (as well as Paragraphs 202 and 253 through 258) should be sealed because they reference "the identities of specific brands paired with nonpublic, campaign-level cost and performance data." Amazon Motion at 7; Sengupta Declaration ¶¶ 11-14. However, Plaintiffs do not oppose sealing the names of advertisers and brands in paragraphs 253 through 258, or the redactions in paragraph 202. As a result, the version of the Complaint submitted by Plaintiffs in Exhibit A does not identify advertisers paired with their performance data, and the data — which shows Amazon dramatically overcharging an unidentified large and sophisticated food-and-beverage seller — should not be sealed.[5]

Finally, Amazon's argument is further undercut because it publicly disclosed on its website certain pricing and performance metrics after the Complaint was filed. The same day the Complaint was filed, Amazon published a blog post disclosing pricing, bidding, and performance data that it claims shows "[t]here is no advertiser harm." *See* **Exhibit C** (*Amazon's Response to the FTC's Lawsuit Regarding Sponsored Ads*," Amazon News, 31 Aug. 2026, www.aboutamazon.com/company-news/amazon-ftc-sponsored-ads-lawsuit-response) ("Response"). In its Response, Amazon publicly disclosed internal pricing, bidding, and performance data in an attempt to support its public-facing defense. In its sealing motion, however, Amazon seeks to selectively seal comparable types of information that undermine its

[5] In paragraph 202, unlike in the other referenced paragraphs, Amazon initially sought to redact pricing data and not advertisers' identities, and so the advertisers' names are already public; accordingly, Plaintiffs do not oppose maintaining the existing redactions in that paragraph.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

public response to the Complaint. Amazon should not be permitted to seal information when it has deliberately and publicly disclosed similar types of information. *See Ironburg Inventions Ltd. v. Valve Corp.*, 2018 WL 4031231, at *3 (W.D. Wash. Aug. 22, 2018) (denying request to seal information where a party had "already disclosed most of the allegedly sensitive 'commercial information' discussed … in an attempt to obtain a positive review of his product"); *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, 2021 WL 2778578, at *10 (W.D. Wash. July 2, 2021) ("There is no basis for the Court to permit redaction of information that has already been publicly disclosed.").

For example, Amazon states in its public Response that "[f]rom 2019 through 2024, the average cost-per-click for Amazon's Sponsored Products search ads remained flat adjusted for inflation" (Ex. C at 6), while it seeks to seal from the public information in the Complaint establishing how much its hidden surcharges — and not inflation — directly raised prices (i.e., Complaint paragraphs 1, 11, 75, 77, 198, 204, 218). Amazon also publicly revealed information about its auction customers' bids, publicizing a claim that "from 2019 to 2024, the average *winning* bid for Sponsored Products search ads fell 50%" (Ex. C at 6, emphasis added), while sealing information in the Complaint (in the same paragraphs listed above) demonstrating how it secretly and substantially raised the prices that were purportedly set by competitive bids during the same time period. Amazon cannot claim that it has a serious confidentiality interest that requires sealing aggregate bidding information that is embarrassing to the company while publicly touting similar aggregate bidding information that it believes paints Amazon's practices in a more favorable light.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

Similarly, Amazon's Response publicly states that its advertisers "really form their bids" to maximize RoAS, and touts that elements of its auction system result in "at least 46% better return on ad spend" (Ex. C at 2), while seeking to conceal facts establishing the extent to which Amazon set its undisclosed surcharges specifically to reduce, and prevent advertisers from maximizing, their RoAS, and in fact substantially decreased RoAS across the entire U.S. market (i.e., Complaint paragraphs 60-62, 78, 176, 193, 195-96).

While the practices described in these self-serving statements in no way entitle Amazon to secretly add surcharges to prices set at auction, the statements do wholly undercut Amazon's arguments that it must keep secret data about what advertisers were charged, the return they received, and the impact of Amazon's actions on those metrics. Plaintiffs therefore request that the Court deny Amazon's request to seal information regarding the magnitude of the hidden surcharges Amazon has been collecting from its unwitting advertising customers in Paragraphs 1, 6, 11, 75, 77, 78, 198, 199, 204, 216, 217, 218, 255, 262, with the exception of redacting the names of the advertiser and brands in Paragraph 255.

## II. AMAZON FAILS TO DEMONSTRATE ANY COMPELLING REASON TO SEAL HOW AMAZON KEPT ITS SOFT RESERVES CONCEALED FROM ADVERTISERS

Amazon also seeks to seal information detailing the mechanisms that the company used to keep its soft reserve system concealed from advertising customers and to make the incremental surcharge increases appear to be the result of increased bidding competition among advertisers, including: (a) historical and current constraints Amazon imposed on the amount of surcharge applied (Paragraphs 56, 65, 66, 68, 180, 182, 183, 194, 205, 206, 211, 226, 228, 252, 261, 262); (b) the mechanisms Amazon has used to set soft reserves and their targeted



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

performance levels (Paragraphs 60, 61, 62, 69, 175, 176, 193, 195, 196, 210); and (c) information relating to experiments Amazon conducted in 2023 to determine whether higher surcharge levels could be detected by advertisers (Paragraphs 212 and 258).

Contrary to Amazon's assertions, much of this information is not "granular," Amazon Motion at 5, but rather describes the basic concepts and goals underpinning Amazon's illicit surcharge calculation system. The way that system operates is central to this litigation and material to Amazon's advertisers who have been substantially harmed by Amazon's unlawful conduct.

Amazon only provides vague, speculative statements that the sealed information is "commercially sensitive business information" because it includes "current operative settings of Amazon's proprietary auction systems," which an unnamed competitor could use "to calibrate its own advertising products to undercut Amazon[.]" Sengupta Declaration ¶¶ 5-6. Amazon provides no specific evidence of how competitors might use this information, much less use it lawfully, which is sufficient to deny the request to seal it. *See Hodges v. Apple, Inc.*, 2013 WL 6070408, at *2 (N.D. Cal. 2013) ("An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient." (quoting *Dunbar v. Google, Inc.*, 2012 WL 6202719, at *4–5 (N.D. Cal. Dec. 12, 2012) (alteration in original)); *X One, Inc. v. Uber Techs., Inc*., 2020 WL 718310, at *3 (N.D. Cal. Feb. 12, 2020) (denying sealing because "generalized assertions" that information "could be leveraged by competition" do not "rise to the level of compelling interest").

Amazon's argument appears to be that competitors could "undercut" Amazon by charging a lower surcharge than Amazon does; in other words, Amazon is arguing that an



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

important dimension of competition is the existence and amount of the surcharges that it kept concealed from customers. To implement a similar surcharge system to Amazon's, its competitors would likely need to engage in a similar unlawful campaign of deceptive statements and concealment, and Amazon has not put forward any evidence that its competitors are likely to use the information to engage in legal practices that are not dependent on deception. *See* Dkt. 1. ¶¶ 53, 78, 190 (quoting Amazon documents describing the need to deceive advertisers in order to profit from surcharges).

Amazon's argument is even weaker for information about mechanisms that Amazon no longer uses (*i.e.*, reserve constraints and mechanisms from 2019 and 2020 in Complaint paragraphs 56, 175, 180, 182, 183), where it merely asserts without evidence that the historical information could somehow "reveal Amazon's methodology for tuning its systems." Sengupta Declaration ¶ 5. Finally, Amazon's current method of calculating its surcharges to restrict its advertisers' performance is neither innovative nor sophisticated, but rather amounts to simply placing automatic hidden surcharges on top of its auction prices. Amazon's methods are no more trade secrets than shill bidding, auction rigging, or other deceptive forms of auction manipulation.

Plaintiffs therefore request that the Court deny Amazon's request to seal information regarding the magnitude of the hidden surcharges assessed to Amazon's advertising customers in Paragraphs 56, 60, 61, 62, 65, 66, 68, 69, 175, 176, 180, 182, 183, 193, 194, 195, 196, 205, 206, 210, 211, 212, 226, 228, 252, 258, 261, 262.



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829

## CONCLUSION

Amazon should not be allowed to hide how, and by how much, it has overcharged its advertising customers. There is no compelling reason why law enforcers should not be allowed to publicly reveal how Amazon deceives its advertising customers and the specific harm it causes them. Plaintiffs respectfully request that the Court deny Amazon's Motion to Seal, except as to the information Plaintiffs have consented to seal, and direct Plaintiffs to file a further unredacted Complaint.

## LOCAL RULE 7(e) CERTIFICATION

I certify that this memorandum contains 3,755 words, in compliance with the Local Civil Rules.

Dated: October 13, 2026

By *s/ Ishan Shivakumar*

Ishan Shivakumar, NY Bar # 5901855
Jonathan W. Platt, NY Bar #3946522
Darren H. Lubetzky, NY Bar #4932976
Adam K. Hersh, NY Bar #5693064
Vikram Jagadish, NY Bar #5516588
Brian N. Lasky, NY Bar #3993417
Jason E. Kornmehl, NY Bar #5348818
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel: 212-607-2829
Email: ishivakumar@ftc.gov
Email: jplatt@ftc.gov
Email: dlubetzky@ftc.gov
Email: ahersh@ftc.gov
Email: vjagadish@ftc.gov
Email: blasky@ftc.gov
Email: jkornmehl@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

*s/ Ian R. Engelbeck*
Ian R. Engelbeck*
Assistant Attorney General
Mark Cucci*
Senior Assistant Attorney General Alaska Department of Law
Special Litigation Section 1031 West 4th Ave., Suite 200
Anchorage, AK 99501
Tel: 907-269-5200
Email: ian.engelbeck@alaska.gov
Email: mark.cucci@alaska.gov

*Attorneys for Plaintiff State of Alaska*

*s/ Kiersten Schneider*
Kiersten Schneider, AZ Bar No. 039766*
Jesse Stewart, AZ Bar No. 041176*
Assistant Attorneys General
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Tel: 602-542-1517
Fax: 602-542-4377
Email: consumer@azag.gov
Email: Kiersten.Schneider@azag.gov
Email: Jesse.Stewart@azag.gov

*Attorneys for Plaintiff State of Arizona*

*s/ Katherine M. Field*
Katherine M. Field CO Reg. No 42024*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773 (*pro hac vice* forthcoming)
First Assistant Attorney General
Colorado Department of Law
1300 Broadway, 9th Floor
Denver, Colorado 08020
Tel: (720) 508-6208
Email: kate.field@coag.gov
Email: Lauren.Dickey@coag.gov

*Attorneys for Plaintiff State of Colorado*

*s/ Nicklas A. Akers*
Nicklas A. Akers*
Senior Assistant Attorney General, Consumer Protection
Michael E. Elisofon*
Supervising Deputy Attorney General
Holly Mariella*
Deputy Attorney General
455 Golden Gate Ave, Suite 1100
San Francisco, CA 94102
Tel: 415-510-4400
nicklas.akers@doj.ca.gov
michael.elisofon@doj.ca.gov
holly.mariella@doj.ca.gov

*Attorneys for Plaintiff State of California*

*s/ Lizabeth Brady*
Lizabeth Brady*
Director, Antitrust Division
Lee Istrail*
Assistant Attorney General
Steven J. Orban*
Assistant Attorney General
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Tel: 850-414-3300
Email: liz.brady@myfloridalegal.com
Email: lee.istrail@myflridalegal.com
Email: steven.orban@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

*s/ Haley Comella*
Haley Comella*
Wilton Person*
Assistant Attorneys General
Office of Illinois Attorney General
Consumer Fraud Bureau
115 S. LaSalle Street Chicago, Illinois 60603
Tel.: 312-814-3153
Email: Haley.Comella@ilag.gov
Email: Wilton.Person@ilag.gov

*Attorneys for Plaintiff State of Illinois*

*s/ Eric H. Wessan*
Eric H. Wessan*
Assistant Attorney General
Office of Iowa Attorney General
1305 E. Walnut St.
Des Moines, Iowa 50319
Tel: 515-281-3731

Email: eric.wessan@ag.iowa.gov

*Attorneys for Plaintiff State of Iowa*

*s/ Stephanie N. Guyon*
Stephanie N. Guyon (ISB No. 5989)*
Deputy Attorney General
Idaho Attorney General's Office
Consumer Protection Division
P.O. Box 83720
Boise, ID 83720-0010
Tel: 208-332-3548
Email: stephanie.guyon@ag.idaho.gov

*Attorney for Plaintiff State of Idaho*

*s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82)*
Chief Counsel and Director of Consumer Protection
Brady Quackenbush (IN Atty No. 37730-30)*
Jay Hong (IN Atty No. 39263-49)*
Deputy Attorneys General, Consumer Litigation
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Tel: 317-232-6309
Email: Scott.Barnhart@atg.in.gov
Email: Brady.Quackenbush@atg.in.gov
Email: Jay.Hong@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

*s/ Lindsay Rabalais Coussan*
Lindsay Rabalais Coussan*
Assistant Attorney General Consumer Protection Section
Office of the Louisiana Attorney General
1885 N. Third St.
Baton Rouge, LA 70802
Tel: 225-326-6438
Email: CoussanL@ag.louisiana.gov

*Attorneys for Plaintiff State of Louisiana*

*s/ Philip D. Ziperman*
Philip D. Ziperman (MD# 12430)*
Deputy Chief
Consumer Protection Division
Office of the Maryland Attorney General
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
Tel: 410-576-6417
Fax: 410-576-6566
Email: pziperman@oag.maryland.gov

*Attorneys for Plaintiff Consumer Protection Division, Office of the Maryland Attorney General*

*s/ Conor C. Vance*
Conor C. Vance*
Zeyad Assaf*
Deputy Attorneys General
Division of Law
Consumer Fraud Prosecution Section 124
Halsey Street, Fifth Floor Newark, NJ 07101
Tel: 609-696-5363
Email: conor.vance@law.njoag.gov
Email: zeyad.assaf@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

*s/ John Christian Lewis*
John Christian Lewis*
Division Chief, Consumer Protection
Philip R. Heleringer*
Executive Director, Consumer Protection
Jonathan Farmer*
Deputy Executive Director, Consumer Protection
John Ghaelian*
Assistant Attorney General
Office of the Kentucky Attorney General
1024 Capital Center Drive, Suite 200|
Frankfort, Kentucky 40601
Tel: 502-696-5314
Email: Christian.Lewis@Ky.gov
Email: Philip.Heleringer@Ky.gov
Email: Jonathan.Farmer@Ky.gov
Email: John.Ghaelian@Ky.gov

*Attorneys for Plaintiff Commonwealth of Kentucky*

*s/ Benjamin J. Swanson*
Benjamin J. Swanson (NE #27675)*
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68508
Telephone: (402) 471-7759
Fax: (402) 471-4725
Email:
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

*s/ Jesse Ramos*
Jesse Ramos*
Special Deputy Attorney General
Brian Rabinovitz*
Director of Major Litigation
Consumer Protection Division
North Carolina Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tel: 919-716-6000
Fax: 919-716-6050
Email: Jramos@ncdoj.gov
Email: Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina, ex rel. Jeff Jackson, Attorney General*

*s/ Jane M. Azia*
Jane M. Azia*
Bureau Chief
Christopher L. McCall*
Assistant Attorney General
Bureau of Consumer Frauds & Protection
Office of the New York State Attorney General
28 Liberty Street
New York, New York 10005
Tel: 212-416-8727 (Azia)
Tel: 212-416-8365 (McCall)
Email: jane.azia@ag.ny.gov
Email: christopher.mccall@ag.ny.gov

*Attorneys for Plaintiff State of New York*

*s/ Melissa H. Shirey*
Melissa H. Shirey*
Senior Deputy Attorney General
PA Attorney I.D. No. 89257
Pennsylvania Office of Attorney General
4801 Atlantic Avenue
Erie, PA 16506
Tel: 814-240-1180
Email: mshirey@attorneygeneral.gov

Jill T. Ambrose*
Assistant Director, Bureau of Consumer Protection
Assistant Chief Deputy Attorney General
PA Attorney I.D. No. 323549
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
Tele: 412-565-3050
Email: jambrose@attorneygeneral.gov

*Attorneys for Plaintiff Attorney General of Pennsylvania*

*s/ Cameron R. Capps*
Cameron R. Capps*
Deputy Attorney General
Kristin Siegel*
Assistant Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone:(405) 522-9052
Facsimile: (405) 521-3921
Email: Cameron.Capps@oag.ok.gov
Email: Kristin.Siegel@oag.ok.gov

*Attorneys for Plaintiff State of Oklahoma*

*s/ Jared Q. Libet*
Jared Q. Libet*
Assistant Deputy Attorney General
Jordan Martin*
Assistant Attorney General
Office of the Attorney General
Consumer Protection & Antitrust Division
Tel: 803-734-5251
Email: jlibet@scag.gov
Email: jordanmartin@scag.gov

*Attorneys for Plaintiff State of South Carolina*

*s/ Alex Carnevale*
Alex Carnevale*
Managing Attorney, Consumer and Economic Justice Unit
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400 x 1895
Email: acarnevale@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

*s/ Sarah L. Jameson*
Sarah L. Jameson*
Assistant Attorney General
Office of Vermont Attorney General 109 State Street
Montpelier, VT 05609
Tele: 802-828-3170
Email: sarah.jameson@vermont.gov

*Attorneys for Plaintiff State of Vermont*

*s/ Joseph Kanada*
Joseph Kanada, WSBA No. 55055
Gardner U. Reed, WSBA No. 55630
Assistant Attorneys General
Consumer Protection Division
Washington State Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tele: 206-464-7744
Email: Joe.Kanada@atg.wa.gov
Email: Gardner.Reed@atg.wa.gov

*Attorneys for Plaintiff Washington State Attorney General's Office, Consumer Protection Division, and local counsel for Plaintiffs State of Alaska, State of Arizona, People of the State of California, State of Colorado, State of Florida, State of Idaho, State of Illinois, State of Indiana, State of Iowa, Commonwealth of Kentucky, State of Louisiana, Consumer Protection Division of the Office of Maryland Attorney General, State of Nebraska, State of New Jersey, State of New York, State of North Carolina, State of Oklahoma, Commonwealth of*

*Pennsylvania, State of Rhode Island, State of South Carolina, and State of Vermont*

**admitted pro hac vice*



FEDERAL TRADE COMMISSION
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829