The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

No. 2:26-cv-03097-JHC

**DEFENDANT AMAZON.COM, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL COMMERCIALLY SENSITIVE INFORMATION**

## I. INTRODUCTION

Plaintiffs' opposition to Amazon's motion to seal commercially sensitive information misstates both the facts of this case and this District's sealing law. Plaintiffs' meritless position is that because their Complaint alleges secrecy and deception, any effort by Amazon to seal its commercially sensitive performance metrics and financial data is both unjustified and corroborative of those false allegations. Neither is true. Courts routinely seal the kind of granular, proprietary data at issue here, and the Ninth Circuit has held that it is "clear error" to refuse to seal such "confidential and commercially sensitive information." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). That Amazon seeks to protect a subset of confidential business data says nothing about the merit of Plaintiffs' allegations, which will be refuted in due course. And Plaintiffs overlook the narrowness of Amazon's request, which leaves the vast



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

majority of the Complaint available to the public, including detailed allegations about how Amazon's auctions perform and operate. *See, e.g.*, Dkt. 1 ¶¶ 1 (alleged harm amounts); 65, 76–77, 186–187, 189, 204, 206 (alleged "first price rate"); 70–74, 174, 185, 197–204, 244, 246, 249–254, 258, 274–275 (alleged reserve-rate trends, including that Amazon "doubled CPCs"); 175–176, 180–186, 192–196 (operation of Amazon's auctions); 210–213, 223, 226, 262 (alleged "constraint" modifications); 210, 216–217, 225 (alleged RoAS trends). The Court should reject Plaintiffs' attempt to litigate the merits through an initial sealing motion and grant Amazon's motion. Dkt. 91.

## II. ARGUMENT

The Complaint repeatedly references specific performance metrics and financial information that the FTC obtained from Amazon during its pre-filing investigation. Amazon seeks to seal only the narrowest subset of that information, the disclosure of which would competitively harm Amazon and its nonparty advertisers. Nothing in Plaintiffs' opposition undermines the basis for sealing.

### A. Amazon's Commercially Sensitive Information Should Be Sealed.

#### 1. Auction parameters and design specifications should be sealed.

This Court should seal Amazon's granular auction parameters and design specifications. *See* Dkt. 1 ¶¶ 56, 60–62, 65–66, 68–69, 175–176, 180, 182–183, 193, 195–196, 205–206, 209–212, 226, 228, 252, 258, 261–262. None of Plaintiffs' arguments suggests otherwise.

*First*, Plaintiffs' characterization of Amazon's explanations of competitive harm as "vague" and "speculative," Opp. 12, ignores the Sengupta Declaration and misstates the legal standard. Mr. Sengupta explained that "[e]ach element of [auction parameters and design specification] information has a concrete use in the hands of a competitor." Dkt. 92 ¶ 7. A "publisher that obtains the values of Amazon's internal operating points could calibrate its own auction parameters against them," and a competitor armed with those operating points could "model its own auction economics against Amazon's and use that information to undercut Amazon's position when soliciting the same advertisers that Amazon serves." *Id.* Competitors



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

who learn "the granular design of auction mechanisms Amazon built, tested, and continues to use or retired would acquire the benefit of Amazon's knowledge of which designs fail and why—without incurring the cost of a single experiment." *Id.* And "a competitor that obtains the specifics of Amazon's experimentation methodology could replicate Amazon's approach to calibrating its systems." *Id.* That is precisely the kind of detailed showing of compelling reasons that courts consistently find sufficient to justify sealing. *See, e.g.*, *Valtrus Innovations, Ltd. v. Google LLC*, 2026 WL 734528, at *10 (N.D. Cal. Mar. 16, 2026) (sealing "sensitive financial and strategic information" because disclosure "would cause significant competitive harm").

Plaintiffs' own authorities confirm the point. *Hodges v. Apple Inc.* concerned a party that gave no "specific reasons" why disclosure would cause it commercial harm. 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (citation omitted). And the court in *X One, Inc. v. Uber Techs., Inc.* denied sealing because the movant offered only "conclusory" and "generalized assertions" of competitive harm. 2020 WL 718310, at *4 (N.D. Cal. Feb. 12, 2020). Amazon, by contrast, has specified how competitors could use its auction parameters and design specifications against it. *See, e.g.*, Dkt. 92 ¶ 7. Neither *Hodges* nor *X One* supports denying sealing on this record.

*Second*, Plaintiffs' assertion that disclosure would harm Amazon only if competitors engaged in "a similar unlawful campaign of deceptive statements and concealment," Opp. 12–13, improperly assumes the validity of Plaintiffs' allegations before Amazon has even responded to the Complaint. Amazon strongly rejects that premise. It is also irrelevant to the sealing analysis. Reserve pricing is a common feature of auction design across the industry—as Plaintiffs themselves suggest in dismissing Amazon's approach as "neither innovative nor sophisticated." Opp. 13. But novelty is not the test for sealing. What Amazon seeks to protect is not the concept of a reserve price but the specific, proprietary values it assigns to that standard tool and the experiments it used to test them—information that is confidential and commercially sensitive, as it would be for any similarly situated company. Dkt. 92 ¶¶ 5, 7. Plaintiffs acknowledge as much by not opposing the redaction of reserve values elsewhere in the Complaint. Opp. 2 n.1 (not opposing redactions of hard reserve values in Paragraph 209). The



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

risk of a rival gaining an undue advantage from having those parameters is exactly the type of competitive harm sealing protects against. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013).

*Third*, that some of the auction parameters and design specifications were developed in prior years does not make the information any less commercially sensitive. *See* Opp. 13. Courts seal historical data when it "remains relevant and valuable to competitors." *Houserman v. Comtech Telecomms. Corp.*, 2021 WL 54766, at *3 (W.D. Wash. Jan. 6, 2021); *see also Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."). That is the case here. Disclosure of Amazon's historical parameters, alongside its current ones, would provide competitors with critical insight into the evolution of Amazon's auction design and which designs it has decided to retire—enabling other companies to replicate Amazon's approach to calibrating its systems. Dkt. 91 at 6; Dkt. 92 ¶ 5.

Accordingly, the Court should seal the nonpublic auction parameters and design specifications identified in Amazon's motion.

**2. Amazon's nonpublic financial data should be sealed.**

This Court should also seal certain of the Complaint's references to Amazon's nonpublic financial data. *See* Dkt. 1 ¶¶ 1, 4, 6, 11, 44, 75, 77–78, 101, 194, 198–199, 202, 204, 212, 216–218, 252, 255, 262. Here, too, Plaintiffs ignore Amazon's concrete showing of competitive harm.

*First*, Plaintiffs incorrectly state that "Amazon has submitted no evidence" supporting its request to "keep product-level breakdowns confidential." Opp. 8. As the Sengupta Declaration explains, the "disclosure of these discrete dollar amounts and revenue shares would permit competitors to calculate or closely estimate nonpublic revenue information about specific Amazon advertising products," or "deploy" these undisclosed "projections and internal performance metrics" in a competitor's "own marketing and in sales negotiations," putting



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Amazon at a "competitive disadvantage" where "multiple companies compete for the same advertising budgets." Dkt. 92 ¶ 9. Citing no case law, Plaintiffs declare this explanation inadequate. *See* Opp. 8. To the contrary, Amazon has met its burden by "articulat[ing] compelling reasons supported by specific factual findings." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). And this District routinely seals nonpublic revenue data competitors could use to harm a litigant. *See, e.g.*, *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 2018 WL 11433938, at *1 (W.D. Wash. Oct. 12, 2018) ("The Western District of Washington permits retaining under seal nonpublic information regarding litigants' sales, cost, profit, and market share data."). That is true of historical and current data alike. *See supra* § II.A.1; *Houserman*, 2021 WL 54766, at *3–*4.

*Second*, the record contradicts Plaintiffs' argument that Amazon relies only on "blanket, conclusory assertions of harm" to justify sealing its "internal performance metrics." *See* Opp. 6–7 (citation omitted). Amazon explained its *specific* concern that "[c]ompetitors could . . . deploy Amazon's internal projections and internal performance metrics directly in their own marketing and in sales negotiations with the advertisers that both companies solicit, benchmarking their offerings against internal Amazon figures." Dkt. 92 ¶ 9. That stands in stark contrast to Plaintiffs' cited cases, where the movants did not "identify the specific potential harm other than [their] conclusory statement that [they] would be at a 'competitive disadvantage.'" *See Lains v. Am. Fam. Mut. Ins. Co.*, 2016 WL 5115415, at *1 (W.D. Wash. Mar. 3, 2016). Courts routinely seal businesses' internal projections and analyses. *See In re Zillow Grp., Inc. S'holder Derivative Litig.*, 2019 WL 3428664, at *2 (W.D. Wash. July 30, 2019); *Kumandan v. Google LLC*, 2023 WL 2189498, at *2 (N.D. Cal. Feb. 22, 2023).

*Third*, contrary to Plaintiffs' assertions, Amazon has not publicly disclosed the information it seeks to seal. *See* Opp. 9–10. A party waives its right to seal sensitive information only when the exact same information has been disclosed. *See Ironburg Inventions Ltd. v. Valve Corp.*, 2018 WL 4031231, at *3 (W.D. Wash. Aug. 22, 2018); *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, 2021 WL 2778578, at *10 (W.D. Wash. July 2, 2021). Plaintiffs'



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

assertion that Amazon has disclosed different information that Plaintiffs consider "comparable," Opp. 9, does not establish waiver.

But more fundamentally, Plaintiffs are *wrong*—the information listed in Amazon's blog post confirms rather than undermines the line Amazon has drawn regarding confidentiality. The blog discloses aggregate, market-wide *outputs*—the inflation-adjusted trends in average cost-per-click, the decline in average winning bids, and a projected improvement in advertisers' return on ad spend. *See* Dkt. 102-3. Those are the same kinds of outcome metrics and trends that appear unredacted throughout the Complaint by agreement of the parties, including the alleged cost-per-click ("CPC") and return on ad spend ("RoAS") trends and "first price rate" results. *See supra* § II.A.1. By contrast, the information Amazon seeks to seal is the highly confidential, specific numerical values associated with the *inputs* and operating parameters used in Amazon's proprietary auctions, and specific nonpublic financial data. Amazon has consistently sought to seal internal operating parameters and financial figures, while auction outputs have remained public. *See* Dkt. 91 at 6. Amazon's voluntary disclosure of aggregate outputs that it does *not* consider competitively sensitive is consistent with, not a waiver of, its request to seal the specific internal data that is.

**B. Nonparty Advertiser Information Should Be Sealed.**

Plaintiffs' opposition to sealing nonparty advertiser information other than "the names of advertisers and brands" is also misplaced. *See* Opp. 9. Redacting only names, while publishing specific figures related to the nonparty, does not stop a nonparty's competitors from identifying the advertiser and "adjust[ing] their strategies based on otherwise nonpublic details about [the nonparties'] advertising costs, returns, and trends." Dkt. 92 ¶ 12. Disclosure of information like that in Paragraph 255 would also harm Amazon by damaging its relationships with advertisers who trust it to keep their commercial information confidential. *Id.* ¶ 13. This District consistently seals nonparties' nonpublic business data. *See Eko Brands*, 2018 WL 11433938, at *1; *Williams v. PillPack, LLC*, 2021 WL 5113467, at *8 (W.D. Wash. Nov. 3, 2021).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. Amazon's Proposed Redactions Are the Least Restrictive Alternative and Do Not Impede Public Understanding.**

The information Amazon moves to seal is minimal; the vast majority of Plaintiffs' allegations remain public. Before filing its motion, Amazon met and conferred repeatedly with the FTC to narrow the scope of its redactions, withdrew numerous redactions, and did not seek to seal any paragraph in full. *See* Dkt. 91 at 2 n.1. These narrow redactions are themselves the least restrictive alternative, LCR 5(g)(3)(B)(iii), and, aside from conceding a handful of Amazon's redactions, Plaintiffs propose no narrower one; they simply dismiss Amazon's confidentiality concerns. Amazon's redactions preserve public access to Plaintiffs' allegations, while withholding only a limited set of proprietary settings and discrete figures that competitors could exploit.

## III. CONCLUSION

For these reasons and those stated in Amazon's motion (Dkt. 91), this Court should grant the motion and seal the information redacted in the Complaint filed at Dkt. 91-1.

DATED this 19th day of October, 2026.

DAVIS WRIGHT TREMAINE LLP

By *s/ MaryAnn T. Almeida*
John A. Goldmark, WSBA #40980
MaryAnn T. Almeida, WSBA #49086
Theo A. Lesczynski, WSBA #59780
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: (206) 622-3150
Email: johngoldmark@dwt.com
Email: maryannalmeida@dwt.com
Email: theolesczynski@dwt.com

DUNN ISAACSON RHEE LLP

By *s/ Jeannie S. Rhee*
Karen L. Dunn*
Jeannie S. Rhee*
L. Rush Atkinson*
401 9th Street, NW

Washington, DC 20004
Tel: (202) 240-2900
Email: kdunn@dirllp.com
Email: jrhee@dirllp.com
Email: ratkinson@dirllp.com

Hannah Klain*
11 Park Place
New York, NY 10007
Tel: (202) 240-2900
Email: hklain@dirllp.com

GIBSON, DUNN & CRUTCHER LLP

By *s/ Natalie J. Hausknecht*
Natalie J. Hausknecht*
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
Tel: (303) 298-5783
Email: nhausknecht@gibsondunn.com

Gustav W. Eyler*
1700 M Street, N.W.
Washington, DC 20036
Tel: (202) 955-8610
Email: geyler@gibsondunn.com

William Savitt*
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-2355
Email: wsavitt@gibsondunn.com

*Attorneys for Defendant Amazon.com, Inc.*

**admitted pro hac vice*

*I certify that this memorandum contains 2,065 words, in compliance with the Local Civil Rules.*